# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

KENNETH W. SMITH,

      Petitioner,              :         Case No. C-1-99-832

  - vs -                         District Judge Walter Herbert Rice
                                 Magistrate Judge Michael R. Merz

BETTY MITCHELLL,
    Warden,

      Respondent.          :

## REPORT AND RECOMMENDATIONS ON REMAND

This capital habeas corpus case is before the Magistrate Judge upon remand from District Judge Rice for a report and recommendations on the merits of sub-claims two and three of the Third Ground for Relief and sub-claim three of the Sixth Ground for Relief, Judge Rice having concluded that these claims were not procedurally defaulted.

### Third Ground for Relief

In his Third Ground for Relief, Petitioner complains of fourteen various instances of asserted prosecutorial misconduct. Two of these claims were remanded:

(2) improper use of the "a man's home is his castle" argument in voir dire (Petition, ¶57);

(3) misstatement of the burden of proof on mitigating factors during voir dire of Juror Pheanis (Petition, ¶59).

In his Decision and Entry on the merits of the original Report and Recommendations, Judge Rice found that the Ohio Supreme Court decided these two claims on the merits, rather than finding them procedurally barred. He also set forth the standard he applied to the other claims of prosecutorial misconduct:

> The Sixth Circuit has indicated that when prosecutorial misconduct "rises to the level of depriving the defendant of fundamental fairness in the trial process, the claim is remediable on a petition for habeas corpus relief." *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993), *cert. denied*, 510 U.S. 1201 (1994). In *Boyle v. Million*, 201 F.3d 711 (6th Cir. 2000), the Sixth Circuit discussed the factors a court should consider when deciding whether to grant a writ of habeas corpus on the basis of prosecutorial misconduct:
>
>> In *United States v. Carroll*, 26 F.3d 1380 (6th Cir. 1994), we summarized our recent jurisprudence on the issue of prosecutorial misconduct in an effort to provide guidance for future cases and noted that, when addressing claims of prosecutorial misconduct, we first determine whether the challenged statements were indeed improper. *See United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999). Upon a finding of such impropriety, we then "look to see if they were flagrant and warrant reversal." *Id.* (citing *Carroll*, 26 F.3d at 1388). Flagrancy is determined by an examination of four factors: "1) whether the statements tended to mislead the jury or prejudice the defendant; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused." *Id.* at 549-50.
>
> *Id.* at 717. *Accord, DePew v. Anderson*, 311 F.3d 742, 749 (6th Cir. 2002); *Serra*, 4 F.3d at 1355-56.

Decision and Entry, Doc. No. 40, at 21.

The Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA") amended 28 U.S.C. §2254(d) to provide as follows with respect to federal claims decided on the merits in the state courts:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The Supreme Court has recently elaborated on the meaning of these provisions:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L. Ed.2d 389 (2000).   To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."
>
> As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  529 U.S., at 404-405, 120 S.Ct. 1495.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  *Id.,* at 405-406, 120 S. Ct. 1495.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  *Id.,* at 407-408, 120 S.Ct. 1495.  The focus of the latter inquiry is on whether the state court's application of clearly established

3

> federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one. *Id.,* at 409- 410, 120 S.Ct. 1495. See also *id.,* at 411, 120 S.Ct. 1495 (a federal habeas court may not issue a writ under the unreasonable application clause "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685; 122 S. Ct. 1843, 1849-50; 152 L. Ed. 2d 914 (2002).

The Ohio Supreme Court's ruling on these two claims was as follows:

> Defendant claims that during *voir dire,* the prosecutor "embellished" the phrase, "a man's home is his castle," making it into a legal concept. Defendant did not object to the comment at the time. However, he now argues that he was prejudiced by this phrase because the location of the murders was irrelevant and he was not charged with burglary. This legal maxim relates "to the rights of an individual to defend his house against violence, and his person against death." *State v. Nieto* (1920), 101 Ohio St. 409, 415, 130 N.E. 663, 664. *Accord State v. Thomas* (1997), 77 Ohio St.3d 323, 327, 673 N.E.2d 1339, 1342. Defendant claimed that Lewis Ray attacked him. Defendant robbed the Rays in their home. Reference to the Ray home was not irrelevant, and the prosecutor's reference to this phrase did not result in plain or prejudicial error.
>
> Defendant also claims that, during *voir dire,* the prosecutor improperly explained the concept of weighing of aggravating circumstances and mitigating factors during sentencing. Again, there was no objection to these comments. Furthermore, we find that the mere reference to these legal concepts during *voir dire* did not result in prejudicial or plain error. *See State v. Campbell* (1994), 69 Ohio St.3d 38, 51, 630 N.E.2d 339, 352.

*State v. Smith*, 80 Ohio St.3d 89, 110, 684 N.E.2d 668, 689 (1997).

In deciding these claims, the Ohio Supreme Court did not specifically advert to any clearly established United States Supreme Court precedent. In order to avoid being contrary to Supreme Court precedent, however, a state court decision need not cite the controlling precedent or even be aware of it "so long as neither the reasoning nor the result of the state-court decision contradicts

4

them." *Early v. Packer,* 537 U.S. 3; 123 S. Ct. 362; 154 L. Ed. 2d 263 (2002)(per curiam).  A state court decision can constitute an "adjudication on the merits" entitled to deference under 28 U. S.C. §2254(d)(1) even if the state court does not explicitly refer to the federal claim or to relevant federal case law.

The Ohio Supreme Court decided that under Ohio law, the fact that the Rays had been murdered in their own home was not irrelevant, citing the state case law in point.  Petitioner has pointed to no Supreme Court case law[1] which would make reference to a relevant fact in *voir dire* an instance of prosecutorial misconduct.  Although Petitioner claims that the phrase "a man's home is his castle" is not a legal concept, the Ohio Supreme Court found that it was proper shorthand for a legal maxim well established in Ohio law, the right of a person to defend his home and his person against death.  This Court agrees with the Ohio Supreme Court that the reference was relevant in light of Mr. Smith's testimony (expected at the time of voir dire and actually spoken during trial) that Mr. Ray was attacking him when he responded with lethal force, slitting Mr. Ray's throat.

The *voir dire* of Juror Phineas to which Petitioner objects is as follows:

> **Mr. John F. Holcomb:** Sir, just to clear up any possible misunderstanding, it's not just a question of whether or not any possible mitigating circumstances are proven or shown, His Honor will instruct you that the State has a burden of showing mitigating factors, OK, and His Honor will instruct you that you have to weigh them, and if the aggravating factors outweigh the mitigating circumstances, that's one thing, if the mitigating circumstances outweigh the aggravating factor, that's another thing; you could weigh that just like you weigh the evidence in the original case and follow the instructions of the Court in arriving at your verdict?
>
> **Mr. Phineas:** Certainly.

---

[1] Indeed, in the relevant portion of his Traverse (Doc. No. 23 at 40-41), Petitioner cites no case law at all.

Trial Transcript, Vol. I, at 132-133. Petitioner does not say what it is that he believes is unconstitutional about this question, nor does he cite any Supreme Court law that might be applicable. This was the sole question Mr. Holcomb asked of this juror. He asked it after a five-page inquiry by Petitioner's counsel about mitigating factors and the juror's potentially relevant religious beliefs. In context, it is merely a question about whether the juror can weigh the mitigating factors against the aggravating circumstances. It does not comment on the amount of weight to be given or how much weight is needed on either side of the balance. It concludes by asking the juror if he can follow the court's instructions on weighing. In context, it merely reminds the juror that considering mitigating factors is not done in isolation.

In sum, the Ohio Supreme Court's decision on these two claims is not contrary to or an unreasonable application of any clearly established United States Supreme Court precedent. Nor did Mr. Holcomb's conduct in making these two comments during voir dire amount to prosecutorial misconduct within the meaning of the Sixth Circuit precedent cited by Judge Rice, even if this Court were conducting a de *novo* consideration of that conduct. Therefore sub-claims two and three of the Third Ground for Relief should be denied on the merits.

### Sixth Ground for Relief

In the Sixth Ground for Relief, Petitioner complains of ineffective assistance of counsel at the pre-trial preparation, voir dire, and culpability phases of the trial court litigation. The particular claim remanded for merit consideration is (3) failure to remove for cause Jurors Miller, Bowman,

and Woodry (Petition, ¶98).

As Respondent conceded and Judge Rice found, this claim was presented to the Ohio Supreme Court as part of Proposition of Law IX. On the voir dire portion of that Proposition, the court held:

> We addressed defendant's complaints about counsel's actions during *voir dire* under his Propositions of Law VIII and XII. The record indicates that the court conducted a comprehensive *voir dire*. We cannot now second-guess counsel's tactical decisions.
>
> * * * *
>
> We find that counsel's tactical decisions throughout the guilt and penalty phases of the trial did not fall below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. Defendant has not demonstrated "a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph three of the syllabus. We reject Proposition of Law IX.

*State v. Smith*, 80 Ohio St.3d at 112-113, 684 N.E.2d at 690 (1997). The relevant ruling on Proposition of Law XII is as follows:

> Defendant further contends that the trial judge should have, *sua sponte,* excused four jurors for cause because each one had a personal experience or acquaintance with a victim or investigator in the case that indicated he or she could not be fair and impartial. However, neither the defense nor the prosecution objected to these jurors for cause. Under these circumstances, the trial judge should be very reluctant to intervene.
>
> Whether to disqualify a juror for cause is "a discretionary function of the trial court * * * [not reversible] on appeal absent an abuse of discretion." Berk v. Matthews (1990), 53 Ohio St.3d 161, 559 N.E.2d 1301, syllabus. "[T]he trial judge saw and heard" the prospective jurors and could evaluate their responses. State v. Allen (1995), 73 Ohio St.3d 626, 629, 653 N.E.2d 675, 681. We find no abuse of discretion. See State v. Allard (1996), 75 Ohio St.3d 482, 493-496, 663 N.E.2d 1277, 1287- 1289. Furthermore, defendant

> waived any potential error by failing to challenge the prospective jurors at trial. State v. Williams (1977), 51 Ohio St.2d 112, 5 O.O.3d 98, 364 N.E.2d 1364, paragraph one of the syllabus, vacated on other grounds by 438 U.S. 911, 98 S.Ct. 3137, 57 L.Ed.2d 1156. Accordingly, Proposition of Law XII is without merit.

*State v. Smith*, 80 Ohio St.3d at 105, 684 N.E.2d at 685 (1997).

As with the Third Ground for Relief, Petitioner here cites no clearly established Supreme Court precedent holding that failure to attempt to exclude jurors such as these three constitutes ineffective assistance of counsel. By implication, the Ohio Supreme Court determined that counsel's decision not to object was tactical. It is certainly not a matter that counsel did not know of the facts on which Petitioner now relies, for they were brought out on voir dire by Petitioner's counsel.

As to juror Miller, it is true that she worked five years with the wife of one of the detectives involved in the case and knew him on a first-name basis because he stopped at the work place to pick up his wife. However, she had never socialized with either Detective Nugent or the wife; they were merely co-workers. Without more, these facts do not show that she was excusable for cause.

As to juror Bowman, voir dire established that he knew the victims from a flea market. However, it is not difficult to suppose a sound tactical reason for leaving someone who knew the victims from the flea market on the jury: a large part of the defense strategy was to attack the character of the victims as persons who dealt regularly in stolen goods and used their flea market business to profit from those dealings. Counsel was frustrated in his ability to portray the victims in that light and indeed Petitioner complains in other portions of his Petition about how the prosecutor attacked his attorneys and him when they attempted to show the Rays in an unfavorable light. Of course, tactical decisions by counsel are rarely so erroneous as to be properly characterized as ineffective assistance.

With respect to juror Woodry, counsel is criticized for not excusing her when she had had a friend who was murdered by being stabbed fifty-three times. The record reveals the following colloquy between her and the court:

> **The Court:** And on one of your questionnaires that we did not cover earlier was a friend or relative was the victim of a crime, and you mentioned Phyllis Elam in warren County in '89 or '90, is there anything in that occurrence that would cause you not to be fair and impartial in this case?
>
> **Ms. Woodrey:** No.
>
> **The Court:** Tell us about that.
>
> **Ms. Woodrey:** She was just a friend, her husband was a guidance counselor at the high school that my husband taught at, so we've known them for 30 some years.
>
> **The Court:** Can you tell us what type of murder it was?
>
> **Ms. Woodrey:** She was stabbed like 53 times by a, I think he was a friend that she had met at a car dealership, and he kind of stalked her, I think.
>
> **The Court:** That type of thing?
>
> **Ms. Woodrey:** And was very interested in her and when she did not want to be interested in him, why, I think he just –
>
> **The Court:** Because of that, would you be more likely to find the Defendant guilty?
>
> **Ms. Woodrey:** No, that was entirely different.

Trial Transcript at 235-236. Given Ms. Woodrey's answer, it is very unlikely she would have been excused even if counsel had moved to have her excused. The Ohio Supreme Court found it was no abuse of discretion for the judge to leave her on the jury and Petitioner points to no clearly established United States Supreme Court precedent which would dictate a contrary result.

9

The third sub-claim of the Sixth Ground for relief is without merit and should be denied.

## Conclusion

All three remanded claims should be denied on the merits.

The conclusions reached in this Report on these three sub-claims are not disputable among reasonable jurists. Therefore, Petitioner should not be granted a certificate of appealability as to any of them.

November 28, 2003.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).